UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
HUSAN UZAHODJAEV,

                     Plaintiff,

     -against-

UNITED STATES,

                     Defendant.
------------------------------------------------------x

MEMORANDUM & ORDER
12-CR-252 (ENV)

VITALIANO, D.J.

On July 2, 2013, petitioner Husan Uzahodjaev, facing a multi-count indictment, pled guilty, pursuant to a plea agreement, to one count that charged him with conspiracy to commit wire fraud. Uzahodjaev, proceeding pro se, has now moved, under 28 U.S.C. § 2255, to vacate, set aside or otherwise correct his sentence.[1] He pegs relief to the alleged ineffective assistance of trial counsel. Specifically, Uzahodjaev alleges that his lawyer was ineffective for failure to raise a speedy trial violation and to challenge the Court's imposition of a two-level enhancement at sentencing for obstruction of justice. For the reasons set forth below, the motion is denied and the petition is dismissed.[2]

## Background

In September and October of 2011, Uzahodjaev, along with his co-conspirators, stole more than $2 million by electronically diverting bank deposits into sham accounts under their

---

[1] On September 28, 2015, petitioner was granted leave to proceed in forma pauperis. See Dkt. No. 3.

[2] On April 16, 2016, petitioner informed the Court by letter that he had recently been released from custody. See Dkt. No. 61. As is well-settled, this change does not moot his claim or otherwise deprive the Court of jurisdiction over his petition. Carafas v. LaVallee, 391 U.S. 234, 237-38, 88 S. Ct. 1556, 1559, 20 L. Ed. 2d 554 (1968).

control. See Sentencing Memorandum, Dkt. No. 48 ("Sent. Mem."), at 2-3.[3] The scheme was soon stymied. When he was unable to move the funds overseas from the sham accounts, Uzahodjaev realized then the sham accounts had been frozen. Id. at 3. It prompted his flight from New York to California, but not before deleting a number of files from his wife's computer, including the instant messaging program "ICQ." Id. On February 3, 2012, Uzahodjaev was arrested in Los Angeles. Id. He was transferred to this district to face the indictment returned on April 6, 2012. Petition, Dkt. No. 1, at 6.

From the time Uzahodjaev arrived in New York, his counsel and the government were engaged in substantive plea negotiations. As is the norm, to facilitate those discussions, status conferences were calendared and adjourned to keep the case moving toward disposition without objection and in the interests of justice. See, e.g., Dkt. Nos. 6, 10, 13, 14, 16, 18. Finally, on July 2, 2012, the negotiations came to fruition when Uzahodjaev pled guilty. See Transcript of Plea Hearing, Dkt. No. 51 ("Tr"), at 7.

At the plea hearing, following ordinary form and in accord with Rule 11, Uzahodjaev assured the Court that he had had a full and fair opportunity to discuss the case with his lawyer, with whom he said he was fully satisfied. Id. He also acknowledged that he understood that, by pleading guilty, he waived his right to a trial. Id. at 10-12. Further, and most significantly – indeed, dispositively – Uzahodjaev confirmed that he had agreed to waive any right to appeal or to challenge his conviction or sentence by precisely the sort of motion he now presents in the event that the Court imposed a term of imprisonment of no more than 108 months. Id. at 13. In fact, the stipulation specifically included a waiver of such an appeal or challenge based on the Court's computation of his guidelines. Id. at 23-25. In furtherance of that agreement,

---

[3] Because Uzahodjaev was convicted, the Court recites the facts in the light most favorable to the verdict. See Garbutt v. Conway, 668 F.3d 79, 80 (2d Cir. 2012).

2

Uzahodjaev was explicitly advised that "no one [could] predict with certitude what Probation [would] recommend as to the guidelines or what [the Court would] do with it." Id. at 23. And, in case that warning left any doubt, the estimation of the guidelines calculation provided by the government specifically included a two level enhancement for obstruction of justice that Uzahodjaev now attacks. Id.

On July 17, 2014, Uzahodjaev was sentenced to a term of 57 months in prison – well below the 108 month ceiling on his appellate waiver. See Transcript of Sentencing, Dkt. No. 49, at 1. The sentencing guidelines calculated by the Court did include a two-level enhancement for obstruction of justice, which stemmed from his having deleted ICQ from his wife's personal computer to cover his tracks prior to fleeing New York. Sent. Mem. at 4. Uzahodjaev now contends, however, that this enhancement was improper. Specifically, he alleges that he did not delete ICQ in order to impede the investigation by authorities, but rather to hide his criminal activities from his wife. Pet. at 7. Uzahodjaev maintains that removing ICQ from his wife's personal computer was his regular practice whenever he traveled out of state, so as to prevent his co-conspirators from communicating with her when she used the computer in his absence. Id. at 8. Furthermore, Uzahodjaev argues, deleting the ICQ program did not remove any of the ICQ records, files or conversations, and that, after his arrest, he cooperated fully with the investigators in their search for this data by providing pass codes and login information for the ICQ account. Id. at 13.

## Discussion

It is well-established that "knowing and voluntary appellate waivers included in plea agreements must be enforced because, if they are not, the covenant not to appeal becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."

Inited States v. Granik, 386 F.3d 404, 412 (2d Cir. 2004); see also United States v. Salcido-Contreras, 990 F.2d 51, 53 (2d Cir. 1993) ("In no circumstances . . . may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless"). In harmony with these precedents, "[t]o raise a claim despite a guilty plea or appeal waiver, the petitioner must show that the plea agreement was not knowing and voluntary." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008). Where, as here, a petitioner has previously declared that his entry into a plea agreement was knowing and voluntary, "attack[ing] the voluntary and intelligent character of the guilty plea [requires] showing that the advice [] received from counsel was not within [acceptable] standards." United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996) (citing Tollett v. Henderson, 411 U.S. 258, 267 (1967)).

Such a showing follows the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, a defendant must show that "counsel's representation fell below an objective standard of reasonableness," Strickland, 466 U.S. at 687-88; second, that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

Simply put, even had he not waived his right to attempt to do so, Uzahodjaev has failed to meet this test. Uzahodjaev's waiver of the speedy trial defense was, by his own contemporaneous admission, knowing and voluntary. See Tr. at 10-12. Such a waiver – standard fare in plea agreements – is an essential part of the necessary consideration for the

4

benefits of the plea bargain, which Uzahodjaev plainly enjoyed, minimally, in the form of three dropped counts of the indictment. See Dkt. No. 38. Uzahodjaev, moreover, has not stated any facts supporting his claim that his counsel was ineffective for failing to raise a speedy trial defense. Indeed, in light of the repeated continuances agreed to by the parties to facilitate plea discussions, Uzahodjaev's conclusory assertion fails to establish that such a defense was even viable. See Background, supra. In addition, Uzahodjaev's counsel's purported failure to challenge the obstruction enhancement calculated in his guidelines cannot upset the validity of the plea agreement. See United States v. Hernandez, 242 F.3d 110, 113 (2d Cir. 2001) (defendant could not claim ineffective assistance of counsel over excessive sentence because "[i]f the process by which the plea agreement was consummated . . . passes muster, the plea agreement's waiver would bar any consideration . . . of issues that fall within the scope of that waiver."); see also United States v. Djelevic, 161 F.3d 104, 107 (2d Cir. 1998) (rejecting ineffective assistance claim based on attorney's failure to challenge sentence reached through plea agreement).

At bottom, although Uzahodjaev may find the outcome of the plea agreement disappointing – that is, it was less favorable than he had hoped – such disappointment following knowing and voluntary acceptance of the plea is the risk he took for the benefit of the bargain. With nothing in the record to indicate that the agreement was anything less than knowing and voluntary, his challenge is barred by the terms of his contract.

## Conclusion

For the foregoing reasons, Husan Uzahodjaev's petition for a writ of habeas corpus is dismissed and the writ is denied.

Since Uzahodjaev has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in favor of respondent and to close this case.

So Ordered.

Dated: Brooklyn, New York
May 18, 2016

/s/ USDJ ERIC N. VITALIANO
ERIC N. VITALIANO
United States District Judge